# EXHIBIT 1

*[handwritten annotations: "? about a-in-c 9⁰ to fed J. Remand Denied  CAPA Burden on P"]*

## Westlaw.

Not Reported in F.Supp.2d                                              Page 1

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Not Reported in F.Supp.2d, 2005 WL 2083008
(C.D.Cal.)
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Ronit YEROUSHALMI, etc., Plaintiff,
v.
BLOCKBUSTER INC., et al. Defendants
No. CV 05-225-AHM(RCX).

July 11, 2005.

Daniel D. Cho , Daniel J. Hartman , Reuben Yeroushalmi , Yeroushalmi and Associates, Los Angeles, CA, for Plaintiff.
Gerald E. Hawxhurst , John B. Quinn , Kevin Y. Teruya , Quinn Emanuel Urquhart Oliver & Hedges , Los Angeles, CA, Marc A. Fuller , Michael L. Raiff , Robert C. Walters , Vinson and Elkins, Dallas, TX, for Defendants.

### ORDER DISCHARGING ORDER TO SHOW CAUSE

MATZ, J.
*1 The Court, after reviewing the parties' responses to the Court's Order to Show Cause, concludes that it has, and should exercise, removal jurisdiction over this case. FN1

FN1. Docket No. 9.

### I. BACKGROUND

On March 4, 2005, plaintiff Ronit Yeroushalmi filed her complaint with the Superior Court of Los Angeles. The complaint arises from defendant Blockbuster Inc.'s ("Blockbuster") "End of Late Fees" / "No More Late Fees" policy, instituted by the company on or about January 1, 2005. Under these new policies, when a customer keeps a rental item past the item's due date, on the eighth day past

that due date the rental is converted into a sale and the customer is charged the retail selling price of the product less the initial rental fee. FN2 Howell. Decl. ¶ 2. After this "converted sale" takes place the customer has thirty days to return the product, receive a refund or credit, and be charged a restocking fee of $1.25. The complaint is based on defendant's alleged failure to properly disclose the " new 'minimal restocking fee' " and "new policy of charging full retail price upon conversion of overdue rentals into sale[s.]" Compl. ¶ 18.

FN2. As alleged in the complaint, prior to the institution of these new policies " Consumers who failed to return their products within a certain period after the due date were charged not only the late fees, but also had their rental converted to a sale [whereby consumers were charged a "used price" for the rental item.]" Compl. ¶ 15.

The complaint alleges four causes of action against Blockbuster: (1) fraud; (2) unjust enrichment; (3) violation of California Business and Professions Code § 17200, et seq. (" § 17200 "); (4) violation of California Business and Professions Code § 17500, et seq. (" § 17500"). FN3 The complaint also seeks statewide class certification in relation to each cause of action. The prayer for relief seeks compensatory damages, consequential damages, restitution, disgorgement, preliminary and permanent injunctive relief, punitive damages, constructive trust, equitable lien, costs of suit, and attorney's fees. The complaint, in a clear attempt to avoid federal jurisdiction, alleges that (1) "[t]he damages alleged by the named plaintiff total less than $75,000[ ]" and (2) "[a]ggregate damages for the named plaintiff and the class she seeks to acts as a representative total [less] than $5,000,000." Compl. ¶¶ 60 & 61.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

FN3. The caption of the fourth cause of action states, "By Plaintiff Against Defendants' Electronics, Inc. and Does 1 through 100...." Blockbuster is the only named defendant in this action and the caption must be a typographical error.

On April 6, 2005, defendant timely removed this action to federal court on the basis of diversity pursuant to § 1332(a) and § 1332(d)(2). (NOR ¶ 10). On April 12, 2005, the Court ordered defendant to show cause why the action should not be remanded to state court "for failure to make sufficient showing that the amount in controversy exceeds $75,000 or, under [the **Class Action Fairness Act**], $5,000,000." Both plaintiff and defendant have responded to the Court's order.

## II. LEGAL STANDARDS FOR JURISDICTION UNDER 28 U.S.C. § 1332(d)

On February 18, 2005, the United States Congress passed the **Class Action Fairness Act** of 2005 (" CAFA"), Public Law 109-2, 110 Stat. 4 (codified at 28 U.S.C. §§ 1711 -15 , 1651 , 1332 , 1335 , 1603 , 1453 , & 1441), which has now been signed into law. CAFA, in relevant part, amends the diversity jurisdiction statute, 28 U.S.C. § 1332. *See* S.Rep. 109-14 (February 28, 2005). As modified, § 1332 now grants the district courts original jurisdiction of "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2). Subsection (d)(6) further provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of ... [the jurisdictional amount set forth in § 1332(d)(2).]" 28 U.S.C. § 1332(d)(6). In effect, CAFA widely expands the diversity jurisdiction of federal district courts over class actions.

## III. DISCUSSION

\*2 In response to the OSC, defendant argues that the amount in controversy requirement of CAFA has been met because CAFA has (1) shifted the burdens normally imposed in determining jurisdiction onto the plaintiff seeking remand and (2) has altered the rules of aggregation such that aggregation of the broad range of relief which plaintiff prays for is appropriate when determining whether the amount in controversy exceeds the $5,000,000 threshold. For the reasons explained below, defendant is correct on both counts.

For her part, plaintiff argues that (1) she is entitled to limit her claim for relief and avoid federal jurisdiction; (2) any ambiguities in CAFA should be determined according to existing case law, leaving the traditional burdens and rules against aggregation intact (meaning that aggregated injunctive relief, punitive damages, and attorney's fees should not be considered in evaluating amount in controversy); and (3) the complaint does not include the base rental fee incurred by Blockbuster customers as part of the relief sought (meaning that only so-called " hidden" fees should be included in the calculation of the amount in controversy). With regard to the first two points, plaintiff is mistaken. As to the last, although the ambiguous complaint may be construed so as to allow the court to exclude the initial rental cost from the damages prayed for by plaintiff, under CAFA most likely there is jurisdiction regardless of whether the initial rental fee is included.

### A. *Plaintiff's Allegation Limiting Damages Does Not Control*

In the complaint plaintiff alleges that she seeks, on her own behalf and on behalf of the proposed statewide class, an amount in controversy below CAFA's $5,000,000 jurisdictional threshold. Specifically, plaintiff alleges that "[a]ggregate damages for the named plaintiff and the class she seeks to act as a representative total less than $5,000,000." Compl. ¶ 61. The Ninth Circuit has no clear rule governing what standard is applied when a plaintiff alleges an amount that is specifically *less* than the jurisdictional amount. It is clear that in the context of removal, even before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

CAFA, plaintiff's allegation simply does not control or end the amount in controversy analysis. Indeed, CAFA was in part aimed at this very issue. The Senate Judiciary Committee, in a report that accompanied CAFA, identifies this kind of facially limiting provision as one of the problems of "misuse " plaguing class actions. S.Rep. 109-14 at *11. Because plaintiff's limiting allegation does not control, the court must assess jurisdiction under CAFA to determine whether the amount in controversy requirement of § 1332(d) has been met.

### B. The $5,000,000 Question: What Does CAFA Change?

As noted above, the new provisions of § 1332(d) allow for aggregation of damages and require that the amount in controversy exceeds $5,000,000. CAFA is silent as to whether the burdens of proving or disproving removal jurisdiction previously in place when an action is removed pursuant to § 1332 have changed. Where a statute is ambiguous it is appropriate to look to legislative history in order determine congressional intent and aid interpretation. *Hertzberg v. Dignity Partners, Inc.,* 191 F.3d 1076, 1082 (9th Cir.1999) ( "This circuit relies on official committee reports when considering legislative history, not stray comments by individuals or other materials unrelated to the statutory language or the committee reports."); *U.S. v. van den Berg,* 5 F.3d 439, 443 (9th Cir.1993) (" Where other statutory tools are not determinative, legislative statements, particularly committee reports, can be helpful in determining statutory meaning and, therefore, Congressional intent.").

*3 In enacting CAFA, Congress found that,
[a]buses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are (A) keeping cases of national importance out of Federal court; (B) sometimes acting in ways that demonstrate bias against out-of-State defendants; and (C) making judgments that impose their view of the law on other States and bind the rights of the residents of

those states.
PL 109-2, 119 Stat. at *5. Accordingly, the three basic purposes of CAFA are to,
(1) assure fair and prompt recoveries for class members with legitimate claims; (2) restore the intent of the framers of the United States Constitution by providing for Federal Court consideration of interstate cases of national importance under diversity jurisdiction; and (3) benefit society by encouraging innovation and lowering consumer prices.
*Id.* According to the Senate Judiciary Committee's report, CAFA "corrects a flaw in the current diversity jurisdiction statute ... that prevents most interstate class actions from being adjudicated in federal courts." S. Rep. 109-14 at *5.

### 1. CAFA Demands Aggregation and Places the Burden on Plaintiff to Establish the Absence of Federal Jurisdiction.

The courts have previously interpreted the federal jurisdiction statutes to prevent *"separate and distinct* claims of two or more plaintiffs ... [from being] aggregated in order to satisfy the jurisdictional amount requirement. *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (emphasis added). And, the courts previously placed the burden on the removing defendants to establish jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). It is clear that Congress intended CAFA to undo both these policies and rules.

In the words of the Senate Judiciary Committee,
Pursuant to new subsection 1332(d)(6), the claims of the individual class members in any class action *shall* be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs). The Committee intends this subsection to be interpreted expansively. If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). *And if a federal court is uncertain about whether "all*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*matters in controversy" in a purported class action "do not in the aggregate exceed the sum or value of $5,000,000," the court should err in favor of exercising jurisdiction over the case.*

*By the same token, the Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, FN4 and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief).... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.* As noted above, it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (e.g., the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state).... Similarly, if a plaintiff seeks to have a purported class action remanded for lack of federal diversity jurisdiction under subsection 1332(d)(5)(B) ("limited scope" class actions), that plaintiff should have the burden of demonstrating that "all matters in controversy" do not "in the aggregate exceed the sum or value of $5,000,000, exclusive of interest and costs" or that "the number of all proposed plaintiff classes in the aggregate is less than 100."

> FN4. Prior to CAFA, the Ninth Circuit rejected use of the "either viewpoint rule." *Snow v. Ford Motor Co.,* 561 F.2d 787 (1977), *reh'g denied* (1977); *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 957 (9th Cir.2001). It is clear that CAFA overrules the circuit's position on this point insofar as qualifying class actions are concerned. *See* S.Rep. 109-14 at *43 ("Some courts have ... reasoned that assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages. Because S. 5 explicitly allows

aggregation for purposes of determining the amount in controversy in class actions, that concern is no longer relevant.").

*4 S.Rep. 109-14 at *42-44 (emphasis added). The committee report notes that in light of these changes a district court may have to engage in limited discovery in order to assess whether jurisdiction is proper. *Id.* at 44 (noting, however, that "these jurisdictional determinations should be made largely on the basis of readily available information.").

### 2. *The Court Has Jurisdiction Over this Action Under § 1332(d).*

The complaint establishes that the parties' respective citizenships are diverse. Defendant estimates that the amount of compensatory damages, restitution, and disgorgement sought by plaintiff alone exceeds $5,000,000. In order to arrive at this result, defendant adds the amount of converted sales ($3,276,000), restocking fees ($828,000), and related rental fees (in excess of $3,000,000) incurred by California customers between January 1, 2005, and April 18, 2005. Howell Decl. ¶¶ 3-5. FN5 The total of these sums is $7,104,000, well above the jurisdictional threshold established by CAFA. Because defendant's assessment is somewhat lacking in clarity, further inquiry is required.

> FN5. James Howell is the senior vice president and the corporate controller at Blockbuster Inc. Howell Decl. ¶ 1.

First, neither the declaration nor defendant's brief make clear whether the amount stated as total converted sales ($3,276,000) includes those sales converted and later "unconverted" because a customer returned the product within the thirty day " restocking" window. Second, it is plaintiff's position that the initial rental fees paid by customers (in excess of $3,000,000) are not sought and are not included in the prayer for damages. The complaint is not clear on this point. On the one hand, the main focus of the complaint is the converted sale and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

restocking fees incurred by unwitting Blockbuster customers "as a substitute for late fees." Compl. at ¶ 25b; *see, e.g.,* Compl. ¶ 23 ("Defendants' wrongfully imposed extra charges...."), ¶ 25 (" Plaintiff would not have kept her rental items past their respective due dates but for Defendants' misrepresentations."); ¶ 27 ("Defendants intended for Plaintiff to change her financial position to her detriment by believing she could legitimately keep items past their due dates."); ¶ 32 ("Defendants induced Plaintiff into keeping items past their due dates, and thereafter charged Plaintiff a "restocking fee" instead of a late fee."); Compl. ¶ 63 (" Plaintiff seeks to represent in this action the statewide class of all persons who in reliance on Defendant's advertisements of their purported "End of Late Fees" policy rented an item from Defendants and did not return such items until the due date had passed, and thereby suffered damages in the form of fees."). On the other hand, the complaint seeks restitution and disgorgement, as well as compensatory damages, and does not explicitly or implicitly exclude initial rental fees from the scope of such relief and damages. *See, e.g.,* Compl. ¶ 29 ("Plaintiff sustained damages in the amounts she paid Defendants."); Compl. ¶ 45 (" The harm to Plaintiff includes, *but are [sic] not limited to,* the amounts paid in restocking fees, as well as the excess value of "retail" price over a " used" price charged to Plaintiff...."); Compl. ¶ 51 ( "In order to be made whole, Plaintiff must be restored to the position she was *in prior to renting items* from Defendants upon hearing about their " End of Late Fees" policy and thereafter keeping said items until after their due date."); Compl. ¶ 51 ("[D]efendants should disgorge *all* the money they receive as a result of their unfair conduct.").

**\*5** In light of the Senate Judiciary Committee Report, it is proper for the Court to "err" in favor of inclusion and to find that the amount in controversy requirement has been met on this first ground alone. However, because plaintiff seeks other forms of relief that are properly included in the assessment of amount in controversy, the Court need not rest its conclusion on this alone.

In addition to compensatory damages, restitution, and disgorgement, plaintiff seeks injunctive relief,

punitive damages, and attorney's fees. First, the complaint includes a demand for "preliminary and permanent injunctive relief enjoining each Defendant from conducting the "End of Late Fees" policy in a manner that deceives its customers and unfairly takes money from the same [.]" Compl. at 19. As explained in the Senate Judiciary Committee Report, consideration of the cost of injunctive relief, from the defendant's viewpoint, is appropriate under CAFA. On this point, defendant argues that the injunctive relief sought by plaintiff will cost a "substantial" amount. ("[I]f Blockbuster is ordered to change its policy, advertising, or practices associated with converted sales and/or restocking fees, Blockbuster would incur substantial business costs in making such changes."). Plaintiff makes no effort to show that the injunctive relief will not be substantial or that it will be limited in a manner that ensures that it is certain or even likely that the jurisdictional amount is not met.

Second, plaintiff seeks punitive damages in connection with the first cause of action for fraud. Compl. at 19. Under CAFA, it is plaintiff's burden to show that punitive damages will be limited in such a way as to avoid meeting the jurisdictional amount. Plaintiff offers nothing to the Court that would help assess the amount of punitive damages potentially available. And, while the Ninth Circuit previously held that punitive damages may not be aggregated in those cases where the claims are separate and distinct, *see In re Ford,* 264 F.3d at 963, it is clear that CAFA allows for just this sort of aggregation.



Lastly, plaintiff seeks attorney's fees pursuant to California Code of Civil Procedure § 1021.5. FN6 In *Gibson v. Chrysler Corporation,* 261 F.3d 927 (2001) , the Ninth Circuit held that attorney's fees awarded under § 1021.5 could not be attributed to a named plaintiff for the purposes of calculating amount in controversy but rather had to be divided among all the members of the class. *Gibson,* 261 F.3d at 942. Under CAFA, aggregation is appropriate. Once more, plaintiff makes no showing on this point other than to argue that aggregation is not appropriate under prior precedent. Defendant points to the potential for six figure fees in class actions.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

> FN6. Section 1021.5 provides, in relevant part:
> Upon motion, a court may award attorneys' fees *to a successful party* against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.
> (Emphasis added).

Once all these forms of relief are taken into account, it is clear that the jurisdictional amount has been met. The amount of damages may range between $4,104,000 (converted sales and restocking fees alone) to $7,104,000 (including the base rental fee). What is more, it is proper to consider the cost of injunctive relief, potential punitive damages, and attorney's fees. Plaintiff has not shown that the amount in controversy requirement has not been met or that it will be limited in any way. Therefore, under CAFA the Court has jurisdiction. This result is further supported by the Senate Judiciary Committee's direction that "[when] a federal court is uncertain about whether "all matters in controversy" in a purported class action "do not in the aggregate exceed the sum or value of $5,000,000," the court should err in favor of exercising jurisdiction over the case." S.Rep. 102-14 at *42.

*6 This order is not intended for publication.

IT IS SO ORDERED.

C.D.Cal.,2005.
Yeroushalmi v. Blockbuster, Inc.
Not Reported in F.Supp.2d, 2005 WL 2083008 (C.D.Cal.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.