# EXHIBIT 3

*[handwritten annotation:] (burden on P) Remand granted b/c no damages inj. damages spec., prob little*

**Westlaw.**

--- F.Supp.2d ----

Page 1

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
Only the Westlaw citation is currently available.
United States District Court,C.D.
California,Southern Division.
Samuel A. BERRY, Plaintiff,
v.
AMERICAN EXPRESS PUBLISHING,
CORPORATION, et al., Defendants.
No. SA CV 05-302AHS (ANX).

June 15, 2005.

**Background:** Consumer filed class action in state court against credit card company and its subsidiaries seeking injunctive relief to end allegedly unlawful business practice whereby defendants charged credit card holders for unsolicited magazine subscriptions unless they took affirmative actions to contrary. After removal, consumer moved to remand.

**Holdings:** The District Court, Stotler, J., held that:

(1) consumer had burden of showing that remand was appropriate, and

(2) amount in controversy did not exceed $5 million threshold necessary for removal under **Class Action Fairness Act** (CAFA).

Motion granted.

**[1] Statutes 361** ⇐217.3
361k217.3 Most Cited Cases
Committee reports are authoritative source for finding legislature's intent, and may be consulted as one important resource in quest for faithful statutory interpretation.

**[2] Constitutional Law 92** ⇐70.1(1)
92k70.1(1) Most Cited Cases

**Statutes 361** ⇐4
361k4 Most Cited Cases
Where source of legal authority is statutory and not constitutional, Congress retains ability to create and direct law, so long as it is consistent with constitutional principles, and it is particularly important for court to follow that directive.

Where source of legal authority is statutory and not constitutional, Congress retains ability to create and direct law, so long as it is consistent with constitutional principles, and it is particularly important for court to follow that directive.

**[3] Removal of Cases 334** ⇐107(7)
334k107(7) Most Cited Cases
Party opposing removal of interstate class action to federal court has burden under **Class Action Fairness Act** (CAFA) to demonstrate that action should be remanded to state court. 28 U.S.C.A. § 1332(d).

**[4] Removal of Cases 334** ⇐74
334k74 Most Cited Cases
In determining whether class action may be removed from state court pursuant to **Class Action Fairness Act** (CAFA), $5 million amount in controversy requirement may be satisfied either from view of aggregate value to class members or defendants. 28 U.S.C.A. § 1332(d).

**[5] Removal of Cases 334** ⇐74
334k74 Most Cited Cases
Amount in controversy did not exceed $5 million threshold necessary for removal under **Class Action Fairness Act** (CAFA) in credit card holder's class action to enjoin credit card company and its subsidiaries from charging credit card holders for unsolicited magazine subscriptions unless they took affirmative actions to contrary, where holder stated that he and class did not seek recovery in excess of $5 million, and monetary value of injunctive claims

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

Page 2

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

was so uncertain that court could not reasonably determine amount in controversy. 28 U.S.C.A. § 1332(d).

Matthew Hale , Matthew S. Hale Law Offices, Newport News, VA, for Plaintiff.
Andrew W. Moritz , Scott M. Pearson , Stroock Stroock & Lavan , Gerald S. Ohn , CAAG-Office Of Attorney General , Los Angeles, CA, Drew R. Hansen , Call Jensen and Ferrell, Newport Beach, CA, for Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

STOTLER, District Judge.

I.

**PROCEDURAL BACKGROUND**

*1 On April 19, 2005, plaintiff Samuel A. Berry (" Berry") filed a motion to remand. On May 2, 2005, defendants American Express Publishing Corporation, American Express Travel Related Services Company, Inc., and American Express Centurion Bank ("defendants") filed opposition. Plaintiff filed a reply thereto on May 9, 2005. By Order dated May 10, 2005, the Court took the matter under submission.

II.

**FACTUAL HISTORY**

On March 3, 2005, plaintiff filed a class action complaint, No. 05CC00049 ("Complaint"), in the Superior Court of California, County of Orange, on behalf of himself and others similarly situated. Plaintiff has filed the present suit for injunctive relief to end an allegedly unlawful business practice whereby defendants charge credit card holders for unsolicited magazine subscriptions unless the credit card holders take affirmative actions to the contrary. Plaintiff, who was charged for a subscription to " Travel + Leisure," was able to reverse the charges and cancel the magazine after contacting defendants. Nonetheless, plaintiff contends that defendants' actions violate California Civil Code §§ 1584.5 , 1770(a)(14) , and 1770(a)(19).

On April 1, 2005, defendants filed a notice of removal under the newly-enacted **Class Action Fairness Act** of 2005 ("CAFA"). See U.S.C. § 1332(d). Plaintiff opposes removal and has filed a motion for remand on the basis that, notwithstanding the CAFA, defendants still bear the burden to show that the amount in controversy exceeds $5,000,000, and defendants that do not meet this burden when the complaint contains only claims for injunctive relief *and* plaintiff affirmatively indicates that "[n]o monetary award in the amount of $5,000,000.00 or greater is sought that would provide the United States District Court with diversity jurisdiction pursuant to the terms of the **Class Action Fairness Act** of 2005 ..." Complaint, p. 17, ¶ 16.

In reply, defendants urge the Court to interpret the CAFA according to its purported legislative intent to confer jurisdiction on federal courts and to shift the burden to plaintiff to show that removal is improper. Defendants further assert that plaintiff has asserted a claim for statutory damages and that the recovery could exceed $5,000,000. Even if damages are not awarded, defendants contend that the value of the injunctive relief, whether measured from the perspective potential recovery by or value to plaintiff or the cost to defendants, also exceeds the requisite amount in controversy.

III.

**DISCUSSION**

**A. Standard of Review**

**1. Diversity Jurisdiction Prior to Enactment of Class Action Fairness Act**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                 Page 3

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ---)

Prior to the enactment of the CAFA, a removing defendant bore the burden of proving the existence of jurisdictional facts and there was a "strong presumption" against removal jurisdiction. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). On a motion to remand, the court would " resolve all contested issues of substantive fact in favor of the plaintiff ..." *See Boyer v. Snap on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991) (internal citations omitted).

*2 As with other claims brought under diversity jurisdiction, an amount in controversy exceeding $75,000 was required to invoke federal jurisdiction. *See* 28 U.S.C. § 1441(b). In the Court of Appeals for the Ninth Circuit, it was well established that, although joinder was proper for pleading purposes, the value of individual claims could not be aggregated for jurisdictional purposes unless the claims were either joint or common and undivided. *Gibson v. Chrysler Corp.,* 261 F.3d 927, 940 (9th Cir.2001); *see also In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir.1997) (in a class action, "[a]t least one named plaintiff must satisfy the jurisdictional minimum.").

### 2. The Enactment and Purpose of the Class Action and Fairness Act

Under the rule of non-aggregation, class action complaints, which by their very nature often included small individual claims, were regularly remanded for failure to meet the amount in controversy requirement for diversity jurisdiction. Because "federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy," Congress enacted the CAFA on March 3, 2005, to help minimize the alleged class action abuses in state courts and to ensure that certain class actions could be litigated in the appropriate forum. See Senate Pub. 109-14, p. 27.

As part of the CAFA, Congress inserted additional language into Title 28 United States Code Section 1332(d), and what was formerly Section 1332(d) became Section 1332(e). Among other changes, the amount in controversy for class actions was increased to $5,000,000. However, courts are now required to "aggregate the claims of the individual class members to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(6).

### 3. Interpretative Issues Created by the Class Action Fairness Act

CAFA substantially alters federal diversity jurisdiction over class actions. Where former diversity jurisdiction statutes did not specifically address the amount in controversy with respect to class actions, Section 1332(d)(2) provides in pertinent part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs ... and is a class action ...

Section 1332(d)(6) further states:

> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest of costs.

[1] These new additions to the diversity jurisdiction statute create various interpretative issues, such as whether the burden of proof has shifted post-CAFA in favor of federal jurisdiction, and how the amount in controversy should be measured now that aggregation of plaintiffs' claims is required. These two questions are implicated in the matter at hand, and, just as the answers to these questions were not found in the former statutory text, the current amendments do not provide a clear answer. Further, given the recent enactment of the CAFA, the Court finds no cases, binding or otherwise, that speak directly to the questions presented. Thus, the Court faces the difficult task of reconciling previously established, judicially-developed principles of diversity jurisdiction with the purpose and structure of the recent CAFA-amendments to the statute.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                          Page 4

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

Although the Court is cognizant that determining legislative "intent" is a process not without the potential for selective interpretation, where the statute does not squarely address the issue, legislative history is an essential tool for statutory interpretation. To this end, Committee Reports are " the authoritative source for finding the Legislature's intent," and may be consulted as one important resource in the quest for faithful statutory interpretation. *See Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *accord City of Edmonds v. Washington State Building Code Council*, 18 F.3d 802, 805 (9th Cir.1994).

*3 [2] Plaintiffs' arguments to the contrary, and, specifically, that resort to legislative history violates Article III, are misplaced. First, a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself. Second, if legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned. Where the source of legal authority is statutory and not constitutional, such as with the diversity statute FN1, Congress retains the ability to create and direct the law, so long as it is consistent with constitutional principles, and it is particularly important for the Court to follow that directive. Where both plaintiffs' and defendants' interpretations of the burden of proof and the proper method of calculating the amount in controversy are constitutionally permissible, the role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances, the legislative history is a proper tool of statutory interpretation.

#### a. Burden of Proof When Removal is Contested

Although the burden of proof is not addressed in either the text of the original or the text of the new statute, the CAFA was clearly enacted with the purpose of expanding federal jurisdiction over class actions. *See* Sen. Pub. 109-14, p. 8 ("The Framers were concerned that state courts might discriminate against interstate business and commercial activities ... [b]oth of these concerns-judicial integrity and interstate commerce-are strongly implicated by class actions ... [thus] class action legislation expanding federal jurisdiction over class actions would fulfill the intentions of the Framers") (internal quotations omitted).

[3] To this end, the Committee Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court. The Committee Report states that "[i]t is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." S. Rep. 109-14, p. 44; *see also* Sen. Rep. 109-14, p. 43 ("the named plaintiffs should bear the burden of demonstrating that a case should be remanded to state court ...").

Although plaintiff argues that the failure to incorporate this directive on the burden of proof into the statute evinces an explicit intent to maintain the status quo, this contention cannot be squared with the uncontradicted statements contained in the Committee Report. Although the lack of any burden-shifting provisions may be an opaque means of preserving the status quo, as defendants suggest, it is equally possible that it was due to legislative oversight, the inability of the Legislature to foresee, or for statutes to address all circumstances.

*4 Alternatively, and more plausibly, the failure to address the burden of proof in the statute reflects the Legislature's expectation that the clear statements in the Senate Report would be sufficient to shift the burden of proof. The Court notes, with some irony, that the original diversity statute does not contain any reference to the burden of proof. Plaintiff fails to explain how the failure to incorporate the burden of proof in Section 1332(d) should be assigned more or less meaning than the failure to incorporate any burden of proof into the original text. In these circumstances, the Court finds that the failure to explicitly legislate changes on the burden of proof in interstate class actions has little

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)  
(Cite as: --- F.Supp.2d ---)

Page 5

interpretative value.

Finally, in determining that the burden of proof has indeed shifted to the party seeking remand, the Court observes that this interpretation is also consistent with the tradition of placing the burden on the moving party.

### b. Valuation of the Amount in Controversy

Unlike the burden of proof, the amended statute explicitly addresses the amount in controversy requirement for class actions; however, notwithstanding this amendment, like its predecessor, the amended statute does not detail the appropriate means of valuing the amount in controversy. Valuation of the amount of controversy is particularly difficult where the plaintiff seeks non-monetary relief.

Prior to the CAFA, the Ninth Circuit held that, where an individual plaintiff seeks injunctive relief, the amount in controversy may be determined from the perspective of either the value to the plaintiff or the value to defendant. *See In re Ford Motor Co./Citibank (So.Dakota) N.A.*, 264 F.3d 952, 958 (9th Cir.2001). However, because of the non-aggregation rules formerly applicable to all claims, including class actions FN2, the Ninth Circuit did not permit the value of injunctive relief sought in a class action to be determined by examination of its potential aggregate cost to the defendant. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 859 (9th Cir.2001) ; *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir.1977)(holding that " if plaintiff cannot aggregate to fulfill the jurisdictional requirement of § 1332 , then neither can a defendant who invokes the removal provisions under § 1441."). The amount in controversy depended on the nature and value of each class member's separate claim. *See id.*

[4] Given the explicit statutory change allowing aggregation of claims in class actions, it appears as though the justifications previously advanced for considering only the value to individual plaintiffs in a class action are no longer relevant. Since plaintiffs can now aggregate their claims to invoke diversity jurisdiction, finding the amount of controversy from the aggregate cost to defendants does not circumvent any non-aggregation principles and is consistent with the principle that only cases that could have been originally brought in federal court may be removed. Accordingly, the Court concludes that the amount in controversy may be satisfied either from the view of the aggregate value to the class members or defendants.

### B. Merits of Plaintiff's Motion to Remand

*5 [5] Assuming that the burden under the CAFA is on plaintiff to show that the amount in controversy is less than $5,000,000 in the aggregate, plaintiff meets this burden. First, plaintiff does not claim monetary damages. Plaintiff's three claims are explicitly for injunctive relief and plaintiff further states that he has no adequate remedies available at law. *See, e.g.*, Complaint p. 5 ¶ 3, and p. 28 ¶ 62. Although plaintiff also states in the general prayer for relief that he also seeks statutory damages (Complaint, p. 40 ¶ 4), plaintiff specifically states that he and the class do not seek to recover more than $5,000,000. The Court has no reason to assume that plaintiff has misstated the value of the claim to defeat jurisdiction. Given plaintiff's representations to the Court, it would appear that defendants would be in a strong position to estop plaintiffs from asserting a harm and recovering damages in excess of $5,000,000. Plaintiff has met his burden to show that he and the class members will not recover more than $5,000,000 in damages.

The value of the injunctive relief also does not exceed the jurisdictional minimum. Whether taken from the perspective of the plaintiff class members or the defendants, the monetary value of the claims in this matter "are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds [the requisite amount in controversy]." *Morrison v. Allstate Indem. Co.*, 228 F.3d at 1269 (11th Cir.2000).

From the class members' perspective, the value of the injunctive relief appears nominal. Currently,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

Page 6

some class members receive a magazine subscription that has a market value equal to the price that they are charged. For those class members who do not want the subscription, it appears possible to reverse the charges. Thus, the value of an injunction to the class members would be the value of not being bothered by unsolicited magazine subscriptions, an intangible, highly speculative benefit.

Likewise, the cost to defendants if forced to cease this practice is wholly speculative. The cost to defendants of the injunction is not the gross value of the magazine subscription but rather it is either the cost of compliance or lost net benefit. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir.1997). Here, the cost to defendants would be the cost of ceasing the practice; however, it is not clear what costs would be incurred by prohibiting unsolicited magazine subscription offers. Indeed, ceasing this practice might actually result in savings to defendants as a result of fewer mailings, less postage and reduced promotional materials.

Even if one considers the value of the practice as the "cost" to defendants of complying with an injunction, defendants' valuation of the lawsuit as the price of subscriptions multiplied by the number of subscribers is not accurate. First, publishing a magazine and mailing it to subscriber entails costs. The value to defendants of lost subscription is the lost profit from one less magazine subscriber, of which there is no evidence before the Court. Second, it is not clear, nor does it seems necessarily likely that the subscriptions to the various magazines at issue would drop substantially if defendants were barred from making unsolicited subscriptions. Finally, profits from magazine subscriptions depend on a variety of factors, from the price of advertising to the number and demographics of subscribers. There is no indication how these factors would be altered and how defendants' profits would change if the plaintiff class were to prevail. Although the Court is aware that the burden is on plaintiffs to demonstrate that the amount in controversy does not exceeds $5,000,000, the claims in this dispute are so difficult to value that any monetary valuation could

only be wholly speculative. Accordingly, the Court finds that the amount in controversy, from either the perspective of the class members or the defendants, is less than the requisite $5,000,000.

IV.

CONCLUSION

*6 For the reasons stated above, plaintiffs' motion for remand is granted and the matter is ordered remanded. Accordingly, the Court vacates the scheduling conference and the hearing on defendants' petition to compel arbitration and to stay action pending arbitration or, in the alternative, dismiss action, both set for July 25, 2005.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.

> FN1. *See* Senate Committee Report, B.1. (" these procedural limitations [on diversity jurisdiction] regarding interstate class actions were policy decisions, not constitutional ones ... [i]t is therefore the prerogative of Congress to modify these technical requirements as it deems appropriate.").
>
> FN2. Aggregation of plaintiffs' claims prior to the CAFA was permitted only in limited circumstances. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 (11th Cir.2000)(aggregation permitted pre-CAFA only where plaintiffs suing to enforce single title or right in which they had a common and undivided interest). Section 1332(d)(6) now allows the aggregation of class members' claims without limitation.

C.D.Cal.,2005.
Berry v. American Express Pub., Corp.
--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                              Page 7

--- F.Supp.2d ----, 2005 WL 1941151 (C.D.Cal.)
(Cite as: --- F.Supp.2d ----)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.