# EXHIBIT 4

*[handwritten annotation: CAFA jurisdiction found / A-in-C established by calculation]*

Westlaw.

--- F.Supp.2d ---- 						Page 1

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
**(Cite as: --- F.Supp.2d ----)**

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,S.D. Georgia,Augusta
                           Division.
    David W. SENTERFITT, and all others similarly
                     situated, Plaintiff,
                              v.
          SUNTRUST MORTGAGE, INC., Defendant.
                     No. CV 105-059.

                       Aug. 31, 2005.

John B. Long, Tucker, Everitt, Long, Brewton & Lanier, PC, Raymond J. Doumar, Raymond J. Doumar, PC, Augusta, GA, for Plaintiff.
C. Jay Thomson, Morrison & Foerster, LLP, San Francisco, CA, Amy R. Snell, Fulcher Law Firm, James W. Purcell, Fulcher, Hagler, LLP Augusta, GA, for Defendant.

                         **ORDER**

DUDLEY H. BOWEN, JR., District Judge.
*1 Plaintiff has moved to remand the captioned case to the Superior Court of Richmond County, Georgia. (Doc. No. 7.) For the following reasons, Plaintiff's Motion to Remand is **DENIED**.

                      **I. Background**

Plaintiff David W. Senterfitt filed this putative class action in the Superior Court of Richmond County, Georgia on March 30, 2004, alleging that Defendant SunTrust Mortgage, Inc. ("SunTrust") charged him a fee to receive a loan payoff statement by facsimile that violated Georgia law. FN1 (Doc. No. 1, Ex. A.) Specifically, Senterfitt alleges that when he paid off his home loan on or about August 25, 2003, SunTrust charged Senterfitt a $15.00 fee to transmit a loan payoff statement by facsimile. (*Id.*

¶¶ 4 & 6.)

In the First Amended Complaint which Plaintiff filed in state court on February 2, 2005, the prospective class is defined in part as those "[i]ndividuals who were charged an unreasonable fee to receive a loan payoff statement by facsimile at any time during the four (4) year period preceding the filing date of this complaint through the date the court certifies this action." (Doc. No. 1, Ex. B at ¶ 18.) On March 21, 2005, Plaintiff filed a Second Amended Complaint in state court that expanded the class to include individuals who received faxed loan payoff statements during an additional sixteen year period. (Doc. No. 1, Ex. C at ¶ 21.)

Soon after Plaintiff filed the Second Amended Complaint, Defendant removed the case to this Court claiming that the lawsuit met the jurisdictional requirements for removal established by the recently enacted **Class Action Fairness Act** of 2005, Pub.L. 109-2, 119 Stat. 4. (Doc. No. 1, ¶ 5.) Plaintiff responded to Defendant's removal by filing a motion to remand the case to Superior Court on April 29, 2005. (Doc. No. 7.) After reviewing the parties' briefing on the matter, the Court held a hearing on Plaintiff's motion to remand on July 15, 2005.

                      **II. Analysis**

The **Class Action Fairness Act** of 2005 ("CAFA") expands federal court jurisdiction over interstate class actions. FN2 Enacted on February 18, 2005, CAFA applies to "any civil action commenced on or after the date of the enactment of this Act." Pub.L. 109-2, § 9. Therefore, defendants in class action lawsuits filed in state courts before February 18, 2005 may not rely on CAFA to remove these class actions to federal court unless the plaintiffs in those cases have taken some affirmative step since February 18, 2005 to commence a new civil action. *See Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---- Page 2

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
(Cite as: --- F.Supp.2d ----)

807 (7th Cir.2005)(stating that "a new claim for relief ..., the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes"); FN3 *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir.2005). SunTrust contends that Senterfitt took such a step on March 21, 2005 when he filed his Second Amended Complaint to significantly increase the size of the potential class in this case.

### A. Relation Back

*2 The first step in determining whether Plaintiff's filing of the Second Amended Complaint in state court allowed Defendant to remove the case to this Court under CAFA is to decide whether the Second Amended Complaint "relates back" to the filing date of the original complaint. *See* Fed.R.Civ.P. 15(c). As will be explained below, if the Second Amended Complaint does not relate back to the date of the original complaint, Plaintiff commenced a new suit for purposes of CAFA on March 21, 2005 when he filed the Second Amended Complaint. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir.1992). FN4 On the other hand, if the Second Amended Complaint does relate back to the filing of the original complaint on March 30, 2004, the case is not now removable unless it could have been filed originally in federal court in 2004. *See Burns v. Windsor*, 31 F.3d 1092, 1095 (11th Cir.1994)( "[R]emoval is only permissible when [a] plaintiff's claim could have been filed in federal court originally.").

An amended complaint may relate back to the filing date of the original complaint if it satisfies the requirements of Federal Rule of Civil Procedure 15(c). This rule allows a claim in an amended complaint to relate back if it "arose out of the conduct, transaction, or occurrence set forth in or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). In addition to Rule 15's "same conduct" requirement, the Eleventh Circuit recently explained that amended pleadings which add plaintiffs will not relate back if the addition unfairly prejudices the defendant or if the original complaint did not provide adequate notice of the nature of the new proposed class. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131-33 (11th Cir.2004). FN5 Because Senterfitt's Second Amended Complaint alleges the same systematic conduct set forth in the original complaint, the amended class definition will relate back if SunTrust received adequate notice and is not unfairly prejudiced.

### 1. Adequate Notice

For an amendment to relate back to the date of the original complaint, the original complaint must have provided adequate notice to the defendant "not only of the substantive claims being brought against [it], but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 1133 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-55, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). A comparison of the facts in *Cliff* with the instant case reveals that Senterfitt did not provide adequate notice of the size of the new prospective class. For example, the original complaint in *Cliff* alleged that the defendant had violated federal and state law by assessing collection fees and garnishing the prospective class's wages without first conducting a hearing. 363 F.3d at 1117-18. The plaintiff in *Cliff* then amended his complaint, which originally limited the class to only Floridians, to assert claims on behalf of consumer debtors nationwide. *Id.* at 1131. In ruling that the amended claim did not relate back, the Eleventh Circuit stated that the defendant "had been placed on notice of only its obligation to defend itself against claims of *Florida* consumers.... [Thus,] Cliff's original complaint did not provide [the defendant] with adequate notice of the nationwide class." *Id.* at 1132 (emphasis in original). Similarly, neither Senterfitt's original complaint nor the First Amended Complaint adequately notified SunTrust of its obligation to defend against a significantly larger class whose claims stretch twenty years into the past. Thus, the Second Amended Complaint cannot relate back because the prior pleadings did not adequately put

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                    Page 3

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
(Cite as: --- F.Supp.2d ----)

SunTrust on notice of the enlarged class.

### 2. Unfair Prejudice

*3 Much like the concept of notice, the notion of unfair prejudice turns on a defendant's ability to adequately maintain a defense against the newly-added plaintiffs. *See Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3rd Cir.1995) (explaining that prejudice results from relation back if the amendment causes "defendants' liability to increase geometrically and their defensive strategy to become far more complex" as they attempt to gather stale evidence that might be lost or destroyed). Like the defendant in *Cliff*, it appears that SunTrust would be unfairly prejudiced by having to expand its defense to encompass sixteen additional years of claims after it spent the year preceding the filing of the Second Amended Complaint preparing to defend against a much smaller class. FN6 Because this is not "a case in which a class action plaintiff has made a minor modification in the class definition that slightly enlarged the class beyond the scope of the class proposed in the original complaint," *Cliff*, 363 F.3d at 1133 n. 16, the Second Amended Complaint will not relate back.

### B. CAFA's Requirements

Because the Second Amended Complaint does not relate back to the date of the original complaint, it constitutes a new action that was filed after CAFA's effective date. Therefore, the remaining steps in the analysis of Plaintiff's motion to remand focus on whether the Second Amended Complaint satisfies CAFA's removal and jurisdictional requirements codified in 28 U.S.C. §§ 1332, 1446, and 1453. Removal to this Court, therefore, depends on whether the Second Amended Complaint: (1) satisfies the diverse citizenship requirements of CAFA, (2) meets CAFA's amount in controversy requirement, and (3) is not subject to any of the conditions under which the Court may decline to exercise jurisdiction under CAFA.

### 1. Minimum Diversity

CAFA only requires that one member of the prospective class be a citizen of a different state than SunTrust for diversity jurisdiction to exist. 28 U.S.C. § 1332(d)(2)(A). In addition to the fact of Senterfitt's Georgia citizenship, it is undisputed that SunTrust is incorporated in Virginia and maintains its headquarters there. These facts would seem to satisfy CAFA's minimal diversity requirement because SunTrust is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). Senterfitt contends, however, that SunTrust should be considered a citizen of Georgia.

In support of this argument, Plaintiff claims that Defendant SunTrust Mortgage is a citizen of Georgia because SunTrust Mortgage is a subsidiary of SunTrust Bank, which Senterfitt claims is a Georgia citizen. (Pl.'s Br. in Supp. of Mot. to Remand at 15-16.) Plaintiff's argument is misplaced because "a subsidiary corporation has its own principal place of business for purposes of diversity jurisdiction, unless it is merely an 'alter ego' or agent of the parent corporation." 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3625, at 635-36 (2d ed.1984). Because Plaintiff presents no evidence that Defendant is SunTrust Bank's agent or that SunTrust Bank manages, directs, or controls Defendant's activities to the extent necessary to become its "alter ego," this argument fails. *See Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456, 460 (5th Cir.1965).

*4 Second, Plaintiff asserts that Georgia is Defendant's principal place of business because its "nerve center" is located here. (Pl.'s Br. in Supp. of Mot. to Remand at 16.) "A corporation's principal place of business is determined by looking at the 'total activities' of the corporation. This analysis incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)." *Sweat Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir.2005) (citations omitted). Defendant rebuts Plaintiff's assertion with proof that its corporate headquarters,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                              Page 4

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
(Cite as: --- F.Supp.2d ----)

payment processing facilities, and loan servicing operations are located in Virginia. (Def.'s Opp'n to Mot. to Remand at 13). Defendant also explains that its "presence in Georgia is limited to about 30 branch offices, none of which are responsible for the fax payoff statement in this case." *Id.* In light of this proof, Plaintiff is unable to contradict Defendant's contention that it is a Virginia corporation. Because Defendant is a Virginia corporation, neither CAFA's mandatory exception to federal jurisdiction, 28 U.S.C. § 1332(d)(4), nor CAFA's permissive exception, 28 U.S.C. § 1332(d)(3), apply to this case.

### 2. Amount in Controversy

In addition to diversity of citizenship, federal jurisdiction depends on the amount in controversy exceeding $5,000,000. 28 U.S.C. § 1332(d)(2). In order to properly determine the amount in controversy, CAFA directs that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). The Second Amended Complaint reveals that Plaintiff seeks actual damages, treble damages, and punitive damages for each member of the class, provided that the total damages do not exceed $10,000 per class member. (Second Am. Compl. at 9.)

Defendant claims that the amount in controversy exceeds $5,000,000 because it sent "approximately more than 14,000 payoff statements by facsimile last year in the state of Georgia and estimates that it has been faxing payoff statements to Georgia borrowers at least since 1992." (Def.'s Opp'n to Mot. to Remand at 11). Because Senterfitt does not offer any evidence that casts doubt on SunTrust's estimates of the number of faxed loan payoff statements or number of class members, FN7 I accept Defendant's uncontradicted data for the purpose of determining whether the amount in controversy requirement has been met. Applying Defendant's estimates to Plaintiff's claims in the Second Amended Complaint, the amount in controversy in this case exceeds $5,000,000. FN8

### III. Conclusion

As shown above, Plaintiff's filing of the Second Amended Complaint in state court on March 21, 2005 effectively commenced a new action after the enactment of the **Class Action Fairness Act** of 2005. Furthermore, the Second Amended Complaint meets all of CAFA's jurisdictional requirements. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (doc. no. 7) is **DENIED**.

*5 **ORDER ENTERED** at Augusta, Georgia, this 31st day of August 2005.

FN1. The Georgia Fair Lending Act, O.C.G.A. § 7-6A-3(4), provides that a creditor may charge a fee up to $10.00 when a borrower requests a payoff balance on a home loan. While the original complaint also contains a claim for violation of the Georgia RICO statute, O.C.G.A. § 16-14-3, Plaintiff added a claim for breach of contract in the First Amended Complaint. (Doc. No. 1, Ex. B at 3.)

FN2. One of the stated goals of CAFA is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub.L. 109-2, § 2(b)(2).

FN3. The Seventh Circuit recently applied this statement from *Knudsen* in a case involving an amended complaint which increased the size of the prospective class. *See Schorsch v. Hewlett-Packard Co.,* ---F.3d ----, 2005 WL 1863412, *3 (7th Cir. Aug.8, 2005)("[C]reative lawyering will not be allowed to smudge the line drawn by the 2005 Act: class actions ' commenced' in state court on or before February 18, 2005, remain in state court. Amendments to class definitions do not commence new suits."). I decline to follow

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
(Cite as: --- F.Supp.2d ----)

Page 5

*Schorsch* because it is not binding precedent and the Seventh Circuit's treatment of relation back in the context of increasing the size of a class action appears to differ from the Eleventh Circuit's approach. *Compare Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir.1980)("A plaintiff may usually amend his complaint under Rule 15(c) to ... add additional plaintiffs where the action, as originally brought, was a class action."), with *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1132 (11th Cir.2004).

FN4. In *Berkshire*, the plaintiff amended its complaint after Congress increased the amount in controversy requirement for diversity jurisdiction in 1989. In determining whether the amendment constituted a new claim, subject to the new, higher requirement, the court stated " the question becomes whether Berkshire's proposed amendment would relate back to the date of the original complaint" when the lower amount in controversy requirement applied. 854 F.2d at 887.

FN5. While the Eleventh Circuit in *Cliff* did not decide whether it based its analysis of notice and prejudice on Federal Rule of Civil Procedure 15(c)(3) as the Second, Third, and Fifth Circuits have done or whether it follows the Ninth Circuit's judicially-created test, the Eleventh Circuit clearly requires district courts to consider these two elements. *See Cliff*, 363 F.3d at 1132 n. 15. Just as the Eleventh Circuit held in *Cliff*, the application of either test to the instant case leads to the same conclusion.

FN6. While not expressly part of either test described in *Cliff*, some courts look at the reason for adding additional plaintiffs when determining whether an amendment prejudices the defendant for the purposes of relation back. *See Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3rd Cir.1995)(denying relation back to

additional plaintiffs who consciously "sat on their rights."); *In re Bennett Funding Group*, 194 F.R.D. 98, 100 (S.D.N.Y.2000) ("[P]laintiffs invoking the relation back doctrine [must] demonstrate that their failure to add new plaintiffs was the product of some mistake, rather than a deliberate decision.") For example, the Eleventh Circuit in *Cliff* appears to have looked at the plaintiff's motive when it noted that the plaintiff's original limitation of the class was a "strategic decision." 363 F.3d at 1133 n. 16.

Similarly, Senterfitt, as the "master of his own claim," chose to limit the prospective class initially and then expand it significantly in the Second Amended Complaint. *See Burns*, 31 F.3d at 1095. Nothing in Senterfitt's papers indicates that the expansion of the class stemmed from newly discovered information or was an attempt to correct an earlier mistake. Furthermore, when asked at the hearing why he expanded the class, Plaintiff's counsel revealed that the amendment was in retaliation for an argument made by Defendant in its motion for summary judgment.

FN7. Senterfitt's contention that "it would take tens of thousands of claims" to reach $5,000,000 is in agreement with SunTrust's position. *Compare* Pl.'s Br. in Supp. of Mot. to Remand at 14 *with* Def.'s Opp'n to Mot. to Remand at 11.

FN8. Plaintiff claims that the entire $15 fee breaches his residential loan agreement, *see* Second Am. Compl. ¶ 17(1), and that the entire $15 fee violates the Georgia RICO statute. *See id.* ¶¶ 30-31, 33, & 36. Because Plaintiff seeks treble damages, *see id.* at 9, the damages per fax are at least $45. SunTrust estimates that it faxed 14,657 loan payoff statements to Georgia borrowers between May 2004 and April 2005. Multiplying 14,657 by $45 results in $659,565 of damages for that time period. Assuming that SunTrust

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                          Page 6

--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)
**(Cite as: --- F.Supp.2d ----)**

    faxed the same number of payoff statements each of the twelve preceding years, the total damages would amount to $7,914,780. This meets CAFA's requirement without considering Plaintiff's request for punitive damages.

S.D.Ga.,2005.
Senterfitt v. SunTrust Mortg., Inc.
--- F.Supp.2d ----, 2005 WL 2100594 (S.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00059 (Docket) (Mar. 30, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.